IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 8, 2021

## DEON SMITH v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-20-103      Roy B. Morgan, Jr., Judge**
_____

## No. W2020-01672-CCA-R3-PC
_____

Pursuant to a plea agreement, the Petitioner, Deon Smith, pleaded guilty to aggravated robbery, auto burglary, and theft, in exchange for an effective sentence of eight years in the Tennessee Department of Correction. The Petitioner filed a petition for post-conviction relief, claiming his guilty pleas were not knowingly and voluntarily entered due to the ineffective assistance of counsel. The post-conviction court denied relief after a hearing, and the Petitioner now appeals. After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Deon Smith.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts
### A. Guilty Plea Hearing

On August 5, 2019, the Defendant pleaded guilty in Docket Number 19-187 to auto burglary and theft of property and in Docket Number 19-170 to aggravated robbery and theft for an effective sentence of eight years. At the guilty plea hearing, the Defendant testified that he understood his rights and that he was waiving those rights. He

expressed his belief that he did not think "this case was fair" but that he did not want to proceed to trial. He testified that he was satisfied with his attorney's representation and that there was nothing else his attorney could have done for him. The trial court reviewed the Defendant's charges and the sentences to be imposed with him. The Defendant stated his understanding of the plea agreement and that he did not have any questions regarding the plea agreement. The Defendant affirmed that he had reviewed the State's statement of fact[1] with his attorney ("Counsel") and that the facts the State alleged were substantially correct. The trial court then found that the Defendant's decision to enter a plea of guilty had been "freely, voluntarily, knowingly, intelligently and personally made" and accepted the Defendant's guilty pleas.

## B. Post-Conviction Hearing

The Petitioner timely filed a post-conviction petition, asserting that his guilty plea was not knowing and voluntary due to the ineffective assistance of counsel. The post-conviction court held a hearing where the Petitioner, his wife, and Counsel testified.

The Petitioner testified that he was now making allegations that were contrary to his guilty plea hearing testimony. He explained that, since his guilty plea hearing, he realized that Counsel "didn't work for me." By way of example, he referenced an incident where he asked Counsel for his "motion to discovery," and Counsel responded that the Petitioner could not have it because he was on bond. On another occasion, the Petitioner asked Counsel what his exposure would be at trial, and Counsel told him "twelve years." This response scared the Petitioner and caused him to enter the guilty plea.

When asked if Counsel reviewed discovery with him, the Petitioner said that Counsel only showed him Braxton Brooks's statement. When the Petitioner asked to see more discovery, Counsel told him, "No, you can't get it until you sign your plea." The Petitioner recalled meeting with Counsel at Counsel's office on two occasions. He said that the discussion during those meetings centered around whether the Petitioner's potential sentence could be served through probation. The Petitioner stated that Counsel never discussed with him potential defenses. The Petitioner asserted that, had Counsel adequately discussed the case with him, the Petitioner would have proceeded to trial. He explained that his testimony at the guilty plea hearing to the contrary was because he was scared. The Petitioner's wife was pregnant at the time, so the difference between an eight and a twelve-year sentence, when considering a child, was significant to him.

---

[1] The statement of fact is not included in the record.

The Petitioner asserted that Braxton Brooks, a co-defendant, made inconsistent statements that could have been used at trial in his defense. The Petitioner never saw his co-defendant's statements until he went to prison. Further, Counsel failed to interview potential witnesses the Petitioner identified. The Petitioner testified that he did not understand the law and Counsel failed to explain it to him; therefore, his guilty plea was not knowing and voluntary.

On cross-examination, the Petitioner agreed that his guilty plea hearing had been rescheduled because he told the trial court that he needed more time to talk with Counsel about the guilty plea. The trial court moved his guilty plea hearing date by two weeks, thereby giving him the additional time requested in order to consider the plea. The Petitioner reiterated that he did not "know anything" about his case so he felt pressure to accept the State's plea offer.

The Petitioner's wife, Mrs. Smith, testified that she was present during meetings with Counsel. She recalled that Counsel showed them a picture on Facebook and Braxton Brooks's statement but that Counsel "didn't tell us anything." When Mrs. Smith and the Petitioner asked Counsel questions, Counsel's answers were non-responsive. Mrs. Smith and the Petitioner asked for any paperwork related to the case but never received any. When they would inquire about the paperwork, Counsel would change the subject. Counsel told the Petitioner that he would "lose" at trial and receive a twelve-year sentence. Mrs. Smith testified that she and the Petitioner were "pressured."

Counsel testified that, upon being appointed to represent the Petitioner, he filed a motion for discovery and set up an appointment to meet with the Petitioner. His first meeting with the Petitioner was about an hour, during which he reviewed the State's discovery with the Petitioner. Counsel confirmed that he reviewed the indictment with the Petitioner and described the Petitioner's cases as "pretty straightforward." Two of the Petitioner's co-defendants, Braxton Brooks and Cameron Campbell, had entered guilty pleas in exchange for testifying against the Petitioner. The Petitioner was arrested the night of the robbery along with his co-defendants. The Petitioner could offer no alibi for the time in question.

About the State's guilty plea offer, Counsel sought an extension on July 15, 2019, because he had not yet received the State's offer. He received the offer on July 17, 2019, and called the Petitioner to discuss it. They discussed the offer during the phone call but also met at Counsel's office on July 24, 2019, to further discuss the offer. The trial court had granted an extension until August 5, 2019, the date the Defendant pleaded guilty. Counsel agreed that he told the Petitioner his possible range of punishment which was eight to twelve years. He denied telling the Petitioner specifically what sentence he

3

would have received if convicted at trial because he had no way of knowing what sentence a trial court might impose.

Counsel testified that the Petitioner made the choice to enter a guilty plea. He agreed that at trial the State would have presented the testimony of two of the Petitioner's co-defendants, the officers who arrested the Petitioner, and the victim. The Petitioner had no witnesses for his defense and no alibis. Counsel agreed that the State's evidence against the Petitioner was strong, and he conveyed that to the Petitioner.

On cross-examination, Counsel testified that he provided the Petitioner with a physical copy of his discovery materials. Counsel confirmed that he had Carl Jones's, the victim's, and Braxton Brooks's statements. Counsel met with the Petitioner twice at his office, talked with him six times by telephone, and met with him at court appointments. Counsel made a counter-offer to the State's eight-year offer; however, the State was unwilling to further negotiate.

After hearing this evidence, the post-conviction court relied upon the guilty plea hearing transcript to find that "the Defendant knowingly, voluntarily, intelligently and personally made the decision to enter his plea based upon a negotiated plea agreement." The post-conviction court noted the "very thorough and complete discussion under oath with the Defendant" during the plea colloquy. The trial court further found Counsel's testimony credible. The post-conviction court found that Counsel provided and reviewed discovery with the Petitioner and that he met with the Petitioner twice in his office, talked with him by phone on six occasions, and met with him during court appearances.

As to the Petitioner's assertion that Counsel did not discuss possible defenses, the post-conviction listed the significant evidence against the Petitioner, noting a lawyer cannot "make up defenses," and concluded that the Petitioner had failed to present evidence about any possible defenses. The post-conviction court then addressed Mrs. Smith's testimony about feeling pressured. The court acknowledged that defendants experience pressure when they are charged with a crime and assessing potential outcomes in order to make a decision about whether to proceed to trial; however, there was no evidence presented that Counsel "did anything but give an accurate statement of the plea agreement." Counsel possessed the statements of the significant witnesses for the State, and the Petitioner did not identify any other witnesses Counsel should have interviewed. Finally, the post-conviction noted that there was no evidence to support the bare assertion that the outcome would have been different. The court said that a different outcome would be "highly speculative" based upon the proof at the hearing. Based upon these findings, the post-conviction court denied relief.

It is from this judgment that the Petitioner appeals.

4

## II. Analysis

The Petitioner asserts that, due to Counsel's lack of attention to his defense and the Petitioner's "ignorance of the criminal justice system," the Petitioner's guilty plea was not knowingly and voluntarily entered. He contends that Counsel's deficient performance contributed to his lack of understanding and resulted in prejudice. The State responds that the post-conviction court properly denied relief because the Petitioner failed to demonstrate that his guilty pleas were not knowingly and voluntarily entered or that Counsel was ineffective. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). Upon review, this court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings,

5

it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability

must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that there "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

In determining whether a guilty plea was knowingly and voluntarily entered, the standard, of course, is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). The trial court may consider several factors in making this determination, including:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the trial court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn.2006) (citing *Blankenship v. State,* 858 S.W.2d 897, 904 (Tenn. 1993). As a means of determining whether a plea is knowingly and voluntarily entered, the courts must "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244; *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999).

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conclusory allegations unsupported by specifics." *Id*. at 74.

At the post-conviction hearing, the Petitioner testified that he met with Counsel at Counsel's office and spoke with him on the phone. Similarly, Counsel testified that he met with the Petitioner at his office, at court appearances, and spoke with him by telephone. Counsel stated that he provided the Petitioner with discovery and the trial court granted an extension of time to thoroughly review the plea agreement with the

Petitioner. The transcript of the plea colloquy indicates that the Petitioner knowingly and voluntarily entered his guilty plea and that he was aware of the charges and the consequences of entering a plea of guilt. The Petitioner testified that, because his wife was pregnant with their child, he chose to plead guilty for a guarantee of an eight-year sentence rather than face a possible twelve-year sentence if he was convicted at trial.

Having reviewed the appellate record before us, we are not persuaded that the evidence preponderates against the lower court's findings in support of its conclusion that the Petitioner entered a knowing and voluntary guilty plea. The Petitioner offered no witnesses that would have testified in his defense or identified any possible defenses that Counsel should have pursued on his behalf. The State's evidence against the Petitioner was strong. Counsel testified that when he attempted to further negotiate with the State following the eight-year offer, the State declined. The Petitioner explained at the post-conviction hearing his decision to accept the offer for eight years was due to his wife's pregnancy. The guilty plea hearing transcript shows that the Petitioner engaged in the colloquy and appropriately responded to all of the trial court's questions. He testified that he was satisfied with Counsel's representation and he understood the plea agreement. Accordingly, nothing in the record supports the conclusion that the Petitioner's plea was not knowing and voluntary.

Further, the Petitioner has failed to show by clear and convincing evidence his allegation that Counsel demonstrated a "lack of attention to his defense." Upon appointment, Counsel requested discovery and arranged to meet with the Petitioner. Counsel reviewed the co-defendants' statements implicating the Petitioner and the victim's statement. Counsel conveyed to the Petitioner the range of punishment and the seriousness of the evidence against the Petitioner. Counsel met with the Petitioner and his wife on multiple occasions and spoke with the Petitioner by phone. Counsel sought a continuance when he had not received the State's offer to settle the case and called the Petitioner upon receipt of the offer to discuss it. He then set up an appointment to meet with the Petitioner and further review the State's offer. Moreover, the Petitioner did not identify or present any witness that would have aided in his defense. Counsel negotiated the lowest possible sentence for the Petitioner and, in so doing, allowed the earliest release for the Petitioner to be with his family.

We conclude that the Petitioner has not shown that his plea was not knowingly and voluntarily entered or that Counsel's performance affected the voluntariness of the guilty plea. The Petitioner is not entitled to relief.

### III. Conclusion

8

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE